James J. Tutchton
CO Bar # 21138
WildEarth Guardians
1536 Wynkoop Street, Suite 301
Denver, CO 80202
(720) 301-3843
jtutchton@wildearthguardians.org
*Application to appear pro hac vice forthcoming*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**(Tucson Division)**

| | |
|---|---|
| WILDEARTH GUARDIANS, | |
| Plaintiff, | Case No. _____ |
| vs. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| KEN SALAZAR, U.S. Secretary of the Interior, sued in his official capacity, | |
| Defendant. | |

**INTRODUCTION**

1. Plaintiff, WildEarth Guardians ("Guardians"), brings this action against Defendant, Ken Salazar, U.S. Secretary of the Interior ("Secretary") to force him to carry out his mandatory duty under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, to develop and implement a "recovery plan" for the Thick-billed Parrot, *Rhynchopsitta pachyrhyncha*, ("Parrot"). The Secretary's failure to develop and implement a recovery plan for the Parrot constitutes agency action unlawfully withheld or unreasonably delayed and/or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 706(1) & 706(2)(A).

1    2.	The ESA provides the Secretary "shall develop and implement plans [referred to as "recovery plans"] for the conservation and survival of endangered species and threatened species listed pursuant to [the ESA], unless he finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1).  The Parrot has been listed as an endangered species under the ESA since the inception of the Act in 1973.  See 74 Fed. Reg. 33957, 33958.  During the 36 years the Parrot has been on the U.S. endangered species list, the Secretary has neither developed and implemented a recovery plan for the species, nor made a finding that such a plan would not promote the conservation of the species.  Guardians challenges the Secretary's unreasonable and illegal delay in taking either of these statutorily required acts.  This lawsuit seeks a declaratory judgment that the Secretary's continued inaction is illegal and an injunctive order requiring him to act in accordance with the law by the earliest possible date.

## JURISDICTION AND VENUE

3.	This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal question), 28 U.S.C. §§ 2201-2201 (declaratory and injunctive relief), 5 U.S.C. §§ 701-706 (APA), and 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen suit provision).  As required by the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(2)(C), Guardians has afforded the Secretary with more than 60-days written notice of the violations alleged in this Complaint and of Guardians' intention to sue to enforce the law.  The Secretary has not remedied his violations of law by either developing and implementing a recovery plan for the Parrot or making a finding that such a plan would not promote the conservation of the species.  Accordingly, an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act.  28 U.S.C. § 2201.

4.	Venue properly lies in this judicial district pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e).  Both Guardians and the Secretary maintain offices in this judicial district.  Southeastern Arizona, including Cochise, Santa Cruz, Pima, Graham, and Greenlee Counties contained the last known Parrots in the United States and is the most likely area where any recovery of the species in the United States would take

place. Additionally, southeastern Arizona is where Parrots visiting or migrating from existing populations in Mexico would most likely be found. Accordingly, venue most properly rests in the Tucson Division of this judicial district.

**PARTIES**

5.   Plaintiff, WILDEARTH GUARDIANS, sues on behalf of itself and its adversely affected members. Guardians is a non-profit environmental organization whose mission is to protect and restore wildlife, wild places, and wild rivers in the American West. It has over 4,500 members, most of whom reside in Arizona and New Mexico. Guardians has an active endangered species protection program and has repeatedly urged the Secretary to provide ESA protection to all imperiled species, including the Parrot. Guardians' members and staff frequently use and enjoy, and will continue to use and enjoy, the Parrot and its current and potential habitat for wildlife viewing and for recreational, aesthetic, and scientific activities. Guardians and its members are particularly concerned with the conservation of the Parrot and the ecosystem on which it depends for its survival. Guardians and its members have a substantial interest in this matter and are adversely affected by the Secretary's failure to comply with the ESA in this case. The requested relief will redress the injuries of Guardians and its members.

6.   Defendant, KEN SALAZAR, is the Secretary of the United States Department of the Interior. As such he is responsible for developing and implementing recovery plans for species listed pursuant to the ESA. He is sued in his official capacity.

**LEGAL BACKGROUND**

7.   The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered and threatened species …." 16 U.S.C. § 1531(b). The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." 16 U.S.C. § 1532(3). Accordingly, the ultimate goal of the ESA is not only to temporarily save

endangered and threatened species from extinction, but also to recover these species to the point where they are no longer in danger of extinction and no longer need ESA protection.

8. As part of its statutory scheme to conserve endangered and threatened species, the ESA provides the Secretary "shall develop and implement [recovery plans] for the conservation and survival of endangered species and threatened species listed pursuant to [the ESA], unless he finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1).

9. In developing and implementing recovery plans, the Secretary shall, to the maximum extent practicable, give priority to those endangered species or threatened species, without regard to taxonomic classification, that are most likely to benefit from such plans, particularly those species that are, or may be, in conflict with construction or other development projects or other forms of economic activity. 16 U.S.C. § 1533(f)(1)(A).

10. In all such recovery plans, the Secretary shall, to the maximum extent practicable, incorporate in each plan:

(i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;

(ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provision of the Act, that the species be removed from the threatened or endangered species lists; and

(iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal. 16 U.S.C. § 1533(f)(1)(B).

11. The ESA further provides that in developing and implementing recovery plans the Secretary may procure the services of appropriate public and private agencies and institutions, and other qualified persons, 16 U.S.C. § 1533(f)(2), that the Secretary shall report to Congress every two years on the status of efforts to develop and implement recovery plans for all listed species and on the status of all species for which such plans have been developed, 16 U.S.C. § 1533(f)(3), that the Secretary shall provide for public

notice of, and comment on, any new or revised recovery plan prior to its final approval and shall consider all information presented during the public comment period prior to final approval of the new or revised recovery plan, 16 U.S.C. § 1533(f)(4), and that each Federal agency, prior to implementation of a new or revised recovery plan, shall consider all information presented during the public comment period, 16 U.S.C. § 1533(f)(5).

12. The Secretary has adopted a policy that he will develop a recovery plan in compliance with 16 U.S.C. § 1533(f) within two and one-half years of the final listing of a threatened or endangered species. See 59 Fed. Reg. 34272 (Endangered and Threatened Wildlife and Plants: Notice of Interagency Cooperative Policy on Recovery Plan Participation and Implementation under the Endangered Species Act).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

### I. The Thick-billed Parrot

13. The Thick-billed Parrot, *Rhynchopsitta pachyrhyncha*, is the sole surviving parrot species native to the United States. The only other parrot native to the U.S., the Carolina parakeet, *Conuropsis carolinensis*, is extinct. The Thick-billed Parrot measures about 15 to 16 inches in length and is a striking emerald green, with scarlet markings on its head and the bend of the wing and lower leg, and with yellow skin ringing its eyes. A photo, courtesy of Mark L. Watson, is provided below.



14. The Parrot is an intelligent and social bird, which prefers to travel in flocks. Its loud calls sound like human laughter. Parrots in captivity can live to be more than 30 years old. Scientists estimate that only 2,000 to 2,800 adult Parrots remain in the wild.

15. The Parrot feeds primarily on pine seeds and nests in cavities in mature trees. Its preferred habitat includes highland pine-oak forest, but it may forage in lower elevation pine or deciduous forest. In the winter it forms large nomadic flocks that move in response to the availability of pinecones. Accordingly, it needs large areas of suitable habitat across which to forage. Among its most important food sources are Durango, Chihuahuan, Apache, Ponderosa, and Arizona pines, though the Parrot may also eat juniper berries and acorns.

16. The Parrot originally ranged as far north as the pine forests of central Arizona and southern New Mexico. Today, breeding populations exist only in the Sierra Madre Occidental of Mexico. The breeding population in northern Chihuahua, Mexico is within approximately 120 kilometers of the U.S. border. Historically, such as in 1917-1918, flocks of thousands of Parrots were reported in the United States. However, the last credible reports of naturally occurring flocks in the United States are from the Chiricahua National Monument in southeastern Arizona in 1938 and the Animas Mountains of southwest New Mexico in 1964.  Since then, excluding the re-introduction attempt described below, the species has been a sporadic visitor to the United States. The Parrot likely disappeared from the U.S. due to shooting and the destruction of its old growth pine forest habitat by logging.

17. Much of the best Parrot habitat has been degraded by logging. Logging removes mature trees that provide nest sites and reduces pinecone availability. The main threat to the Parrot continues to be habitat destruction as a result of logging, fire, and conversion of forest to cattle pasture or other human uses. Approximately 99.5% of original high-elevation, pine-oak forest in the Sierra Madre Occidental has been logged. Only approximately 22 square kilometers of old-growth forest above 2,300 meters in elevation remain in the species' core range in Mexico.

18. The Parrot is also threatened by the illegal pet trade. Pet traders capture

young birds from the wild, by cutting down nest trees and removing young from nest cavities. Thus, the illegal pet trade harms the species in two ways: by removing individuals from the wild; and by destroying remaining nest trees.

**II.     Recovery Efforts**

19.    The Parrot has been listed as an endangered species under the ESA since the inception of the Act in 1973. See 74 Fed. Reg. 33957, 33958. The species is listed both internationally, as a foreign listed species in Mexico, and domestically, as an endangered species inside the territory of the United States. Id. However, the U.S. Fish and Wildlife Service only includes the Thick-billed Parrot on the list of species listed in other countries provided on the Agency's webpage and not on the list of species listed in the United States. Based on the discussion in 74 Fed. Reg. 33957 at 33958 this appears to be a continuation of a long running clerical error.

20.    Despite having listed the Parrot as an endangered species under the ESA for 36 years, the Secretary has never developed and implemented a recovery plan for the conservation of the species, nor made a finding that a formal recovery plan would not promote the conservation of the species.

21.    The species profile for the Parrot maintained by the U.S. Fish and Wildlife Service on its webpage indicates that no recovery information is available for the species. A search of the U.S. Fish and Wildlife Service's "Recovery Online Activity Reporting System" for the Parrot returns no results. In the biannual reports to Congress, required by 16 U.S.C. § 1533(f)(3), and provided by the Secretary on the U.S. Fish and Wildlife Service's webpage for 1994, 1996, Fiscal Years 1997-1998 and 1999-2000, Fiscal Years 2001-2002, Fiscal Years 2003-2004, and Fiscal Years 2005-2006, no recovery plan for the Parrot is mentioned.

22.    Because the Parrot is endangered by economic activity, including the pet trade, logging, and conversion of forest to cattle pasture or to other human uses, it should rank high in the Secretary's system of prioritizing species for the development and implementation of recovery plans as required by 16 U.S.C. § 1533(f)(1)(A). Additionally,

as discussed below, the Parrot would likely benefit from a formal recovery plan and consistent U.S. Governmental efforts to recover it from the brink of extinction.

23. Despite having never prepared a recovery plan for the Parrot, the U.S. Fish and Wildlife Service was listed as a contributor in a cooperative venture to release Parrots in southeastern Arizona. This cooperative venture was largely run by the Arizona Game and Fish Department and private organizations and individuals. Between September 1986 and September 1993 this cooperative venture released 88 Parrots in the Chiricahua Mountains of southeastern Arizona. Sixty-five of these birds were obtained mainly as confiscations from pet traders by the U.S. Fish and Wildlife Service and were believed to have been captured from the wild in Mexico. The remaining released birds were captive-bred and obtained mainly from zoos.

24. The experimental releases in Arizona yielded mixed results. Some released birds established flocks and began to migrate seasonally between the Chiricahua Mountains and the Mogollon Rim in central Arizona. Others, particularly captive-bred birds, did not migrate. There was at least one successful nesting and a few unsuccessful nesting attempts. Overall, however, the release effort suffered setbacks. The likely wild-caught birds, confiscated from pet traders by the U.S. Fish and Wildlife Service, exhibited good survival and some reproduction. The captive-reared birds had poor survival rates because of deficits in foraging behavior and socialization, and suffered heavy losses to predators. A severe drought in 1989-1990 and a fire in 1990 also set the release effort back. The scientists involved in the effort concluded that a successful re-introduction would be possible if enough high-quality birds could be released. These scientists believed that the highly social, flocking, Parrot suffered from heavy predation by raptors and needed to reach a "critical mass" in order to keep mortality rates at acceptable levels. Nonetheless, attempts to maintain and continue the experimental releases were terminated in 1993. The re-introduced flock persisted until at least 1995, perhaps later.

25. By letter dated October 23, 2009, Guardians provided the Secretary with notice of the violations of law alleged in this Complaint and of Guardians' intention to sue

if the Secretary continued to fail to develop and implement a recovery plan for the Parrot. According to certified mail return receipts, the Secretary received Guardians' notice letter on November 6, 2009. The Secretary did not respond to Guardians' notice letter.

### FIRST CLAIM FOR RELIEF: Violation of ESA

26. All proceeding allegations in this Complaint are incorporated herein by reference.

27. The Secretary has violated his mandatory, non-discretionary duty found in Section 4(f) of the ESA, 16 U.S.C. § 1533(f), to either develop and implement a recovery plan for the Thick-billed Parrot, *Rhynchopsitta pachyrhyncha,* or make a finding that such a plan will not promote the conservation of the species. This violation of law is actionable under the ESA's citizen-suit provision. 16 U.S.C. § 1540(g)(1)(C). The APA provides the standard of review. 5 U.S.C. §§ 706(1) & 706(2)(A). The Secretary's refusal to fulfill his mandatory duty constitutes unlawfully withheld or unreasonably delayed agency action and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Id.

### SECOND CLAIM FOR RELIEF: Violation of APA

28. All proceeding allegations in this Complaint are incorporated herein by reference.

29. The Secretary has unlawfully withheld or unreasonably delayed his compliance with Section 4(f) of the ESA, 16 U.S.C. § 1533(f), with respect to the Thick-billed Parrot, *Rhynchopsitta pachyrhyncha,* for 36 years in violation of the APA. 5 U.S.C. § 706(1).

### REQUEST FOR RELIEF

WHEREFORE, Guardians requests that this Court enter judgment providing the following relief:

A. A declaratory judgment that the Secretary has violated his mandatory duty found in Section 4(f) of the ESA with respect to the Thick-billed Parrot, *Rhynchopsitta pachyrhyncha*;

B. A declaratory judgment that the Secretary has unlawfully withheld or

1  unreasonable delayed compliance with Section 4(f) of the ESA with respect to the Thick-
2  billed Parrot, *Rhynchopsitta pachyrhyncha*, in violation of the APA;
3      C.    An injunctive order requiring the Secretary to comply with Section 4(f) of the
4  ESA with respect to the Thick-billed Parrot, *Rhynchopsitta pachyrhyncha* by a reasonable
5  date certain;
6      D.    An order awarding Guardians its costs of litigation, including reasonable
7  attorney's fees, as provided by the ESA or Equal Access to Justice Act, 28 U.S.C. § 2412;
8  and
9      E.    Such other and further relief as the Court deems just and proper.

Respectfully submitted this 5th day of February, 2010,

                    s/James J. Tutchton
                    *Attorney for Plaintiff WildEarth Guardians*
                    *Application to appear pro hac vice forthcoming*